UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISON

IN RE: §
KAINOS COMMUNITY CHURCH, INC § CASE NO. 12-38296-H1  -11
§
§
Debtor § Small Business Case under Chapter 11

**KAINOS COMMUNITY CHURCH, INC'S DISCLOSURE STATEMENT
DATED MAY 23, 2013**

# Contents

I.   Introduction ......................................................................................................... 4

   A.   General Information Concerning Disclosure Statement and Plan. .................................. 4

II.   Disclaimers. ......................................................................................................... 4

III.   Answers to Commonly Asked Questions. ......................................................... 5

   A.   Who is the Debtor? .......................................................................................... 5

      1.   What is a Chapter 11 bankruptcy? ...................................................... 5

      2.   If the Plan governs how my claim is treated, what is this Disclosure Statement? ....... 5

      3.   Do I have to attend the hearing on the Disclosure Statement and Plan? ...................... 6

      4.   How do I determine how my Claim or Interest is classified? ...................................... 6

      5.   Why is confirmation of the Plan important? ................................................................ 6

      6.   What is necessary to confirm the Plan? ...................................................................... 6

      7.   Is there a Creditors' Committee? ................................................................................ 7

      8.   When is the deadline for returning my ballot? ........................................................... 7

IV.   BACKGROUND/OVERVIEW OF THE DEBTOR'S BUSINESS ............................... 7

   A.   Description and History of the Debtor's Business ........................................................ 7

   B.   Management and Insiders of the Debtor ...................................................................... 8

   C.   Events Leading to Bankruptcy In 2012 ........................................................................ 8

   D.   Debtor's Financial Information ..................................................................................... 9

      1.   Debtor's Assets ........................................................................................................... 9

      2.   Executory Contracts and Unexpired Leases .............................................................. 10

   E.   Significant Events during the Chapter 11 Case ........................................................... 10

   F.   Post-Petition Legal Proceedings ................................................................................. 10

G.     Pre-Petition Legal Proceedings ......................................................................... 10

V.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ........................................................................................... 10

   A.    A. What is the Purpose of the Plan of Reorganization? ................................. 10

   B.    Classes of Claims ....................................................................................... 11

      1.    Administrative Expenses ..................................................................... 11

      2.    Classes of Secured Claims .................................................................. 11

   C.    Means of Implementing the Plan ................................................................ 13

      1.    Source of Payments ............................................................................ 13

      2.    Post-confirmation Management ........................................................... 13

   D.    Risk Factors ............................................................................................... 13

   E.    Executory Contracts and Unexpired Leases ............................................... 14

   F.    Tax Consequences of Plan .......................................................................... 14

      1.    Introduction ........................................................................................ 14

      2.    Tax Consequences to the Debtor ......................................................... 15

      3.    Tax Consequences to Creditors ........................................................... 15

      4.    Preservation of Net Operating Loss and Tax Attributes ....................... 16

      5.    Information Reporting and Backup Withholding .................................. 16

VI.    CONFIRMATION REQUIREMENTS AND PROCEDURES ............................... 16

   A.    Who May Vote or Object ............................................................................ 16

      1.    What Is an Allowed Claim or an Allowed Equity Interest? .................. 17

      *2.*    What Is an Impaired Claim or Impaired Equity Interest? ..................... 17

      3.    Who is Not Entitled to Vote ................................................................ 17

      4.    Who Can Vote in More Than One Class ............................................... 18

   B.    Votes Necessary to Confirm the Plan ......................................................... 18

      1.    Votes Necessary for a Class to Accept the Plan ................................... 18

      2.    Treatment of Nonaccepting Classes .................................................... 18

   C.    Liquidation Analysis .................................................................................. 19

   D.    Feasibility .................................................................................................. 19

      1.    Ability to Initially Fund Plan ............................................................... 19

      2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization ................................................................................................................... 20

VII.    V. EFFECT OF CONFIRMATION OF PLAN ...................................................... 20

   A.    Discharge ................................................................................................... 20

   B.    Modification of Plan ................................................................................... 20

C.    Final Decree ................................................................................................... 20

# I.   Introduction.

## A.   General Information Concerning Disclosure Statement and Plan.

KAINOS COMMUNITY CHURCH, INC ("Debtor") submits this Disclosure Statement under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016 to all of its known Creditors. The purpose of this Disclosure Statement is to disclose information adequate to enable Creditors who are entitled to vote to arrive at a reasonably informed decision in exercising their rights to vote on the Plan of Reorganization ("Plan"). A copy of the Plan is attached as Exhibit A.

Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to them in Article I of the Plan or in the Bankruptcy Code and Bankruptcy Rules. All section references in this Disclosure Statement are to the Bankruptcy Code unless otherwise indicated.

The Debtor has promulgated the Plan consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to provide an opportunity for the Debtor to remain in business. This Disclosure Statement is not intended to replace a careful review and analysis of the Plan, including the specific treatment of Claims under the Plan. It is submitted as an aid and supplement to your review of the Plan to explain the terms of the Plan. Every effort has been made to explain fully various aspects of the Plan as they affect the Creditors. If any questions arise, the Debtor urges you to contact the Debtor's counsel and he will attempt to resolve your questions. Counsel for the Debtor is Nelson M. Jones III, 440 Louisiana, Suite 1575, Houston, Texas 77002. You may, of course, wish to consult with your own counsel. All of the information contained in this Disclosure Statement was obtained from the Debtor's books and records or from the principal of the Debtor, Joe Palmore.

# II.   Disclaimers.

**NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND SECTION 1125 OF THE BANKRUPTCY CODE, AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS AND EQUITY INTEREST HOLDERS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS AND SCHEDULES ATTACHED. EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT THE DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR. UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF. NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE CONCERNING THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED**

**UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED. WHILE THE INFORMATION PROVIDED HEREIN IS BELIEVED RELIABLE, THE DEBTOR HAS NOT UNDERTAKEN TO VERIFY OR INVESTIGATE SUCH INFORMATION, AND MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION. DISTRIBUTION OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS ANY REPRESENTATION OR WARRANTY AT ALL, EITHER EXPRESS OR IMPLIED, BY THE DEBTOR OR ITS RESPECTIVE PROFESSIONAL CONSULTANTS THAT THE PLAN IS FREE FROM RISK, THAT THE ACCEPTANCE OF THE PLAN WILL RESULT IN A RISK-FREE RESTRUCTURING OF THE DEBTOR'S OBLIGATIONS OR THAT THE DEBTOR'S OBLIGATIONS AS RESTRUCTURED BY THE PLAN WILL BE FULLY PERFORMED IN THE FUTURE WITHOUT RISK OF FURTHER DEFAULT. THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED SHOULD BE READ IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN CASE OF ANY INCONSISTENCY.**

## III.   Answers to Commonly Asked Questions.

As part of the Debtor's effort to inform Creditors regarding the Plan and the Plan confirmation process, the following summary provides answers to questions which parties who receive a disclosure statement often ask.

### A.   Who is the Debtor?

Kainos Community Church, Inc is a nonprofit corporation organized in Texas as a Christian House of Worship.

### 1.   What is a Chapter 11 bankruptcy?

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code that allows financially distressed businesses to reorganize their debts. The commencement of a Chapter 11 case creates an estate containing all the legal and equitable interests of the Debtor in property as of the date the petition is filed. Section 1101, 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate the debtor's business as a debtor-in-possession. The Debtor remains in possession of its properties and assets. When a Chapter 11 bankruptcy case is filed, creditors are prohibited from attempting to collect debts or enforce liens against the Debtor or its assets without first obtaining approval from the Bankruptcy Court.

### 2.   If the Plan governs how my claim is treated, what is this Disclosure Statement?

The Bankruptcy Code requires that debtors solicit acceptances and rejections of a proposed plan from creditors and shareholders whose claims and interests are impaired before the plan can be

confirmed by the bankruptcy court. Before debtors may solicit acceptances of a plan, however, the bankruptcy court must approve a disclosure statement and determine that the disclosure statement contains information adequate to allow creditors and shareholders to make an informed judgment about the plan.

### 3.     Do I have to attend the hearing on the Disclosure Statement and Plan?

If you do not believe that the disclosure statement contains adequate information or if you believe that there is a problem with the Debtor's plan and you want to either get additional information from the Debtor or object to the plan, you need to file a written objection stating your position and come to hearing. Debtor's counsel can discuss your concerns from the Debtor's perspective, but cannot give you legal advice and you may wish to consult your own counsel.

### 4.     How do I determine how my Claim or Interest is classified?

To determine the classification of your Claim you must determine the nature of your claim or interest. Under the Plan, claims and interests are classified into a series of Classes. The pertinent sections of the Disclosure Statement and Plan disclose, among other things, the treatment that each class of Claims or Interests will receive if the Plan is confirmed.

### 5.     Why is confirmation of the Plan important?

The Bankruptcy Court's confirmation of the Plan is a condition to the Debtor's right to carry out the treatment of creditors and shareholders under the Plan. Unless the Plan is confirmed, and any other conditions to confirmation or to the effectiveness of the Plan are satisfied, the Debtor is legally prohibited from satisfying Claims or Equity Interests as provided in the Plan.

### 6.     What is necessary to confirm the Plan?

Under applicable provisions of the Bankruptcy Code, confirmation of the Plan requires, among other things that at least one class of impaired Claims or Interests vote to accept the Plan. Acceptance by a class of claims means that at least two-thirds in the total dollar amount and more than one-half in number of the allowed claims actually voting in the class vote in favor of the Plan. Because only those claims or interests who vote on a plan will be counted for purposes of determining acceptance or rejection of a plan by an impaired class, a plan can be approved with the affirmative vote of members of an impaired class who own less than two-thirds in amount and one-half in number of the claims. Besides acceptance of the plan by each class of impaired creditors or interests, a bankruptcy court also must find that a plan meets a number of statutory tests before it may confirm the plan. These requirements and statutory tests generally are designed to protect the interests of holders of impaired claims or interests who do not vote to accept a plan but who will nonetheless be bound by the plan's provisions if a bankruptcy court

confirms a plan. If one or more classes vote to reject a plan, a debtor may still request that the bankruptcy court confirm a plan under section1129(b). To confirm a plan not accepted by all classes, a debtor must demonstrate that the plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under, and that has not accepted, the plan. This method of confirming a plan is commonly called a "cramdown". In addition to the statutory requirements imposed by the Bankruptcy Code, the plan itself also provides for certain conditions that must be satisfied as conditions to confirmation.

### 7.    Is there a Creditors' Committee?

In this case no Creditors' Committee was formed.

### 8.    When is the deadline for returning my ballot?

The Bankruptcy Court has directed that, to be counted for voting purposes, your ballot must be received by the Debtor's counsel, Nelson M. Jones III, 440 Louisiana, Suite 1575, Houston, Texas 77002 or fax 713-236-8990, by 5:00 p.m., Houston time, on the date set forth in the Order Approving Disclosure Statement.

> **IT IS IMPORTANT THAT ALL IMPAIRED CREDITORS VOTE ON THE PLAN. THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. THE DEBTOR THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF CREDITORS AND RECOMMENDS THAT ALL IMPAIRED CREDITORS VOTE TO ACCEPT THE PLAN.**

## IV.    BACKGROUND/OVERVIEW OF THE DEBTOR'S BUSINESS

### A.    Description and History of the Debtor's Business

The Debtor is a Texas non-profit corporation located at 19946 Saums Rd, Katy, Texas 77449 that began its fellowship in 2002. Dr. Joe Palmore serves as pastor and Dr. Yalonde Palmore as co-pastor of Kainos Community Church, Inc.(hereinafter "Kainos Community").

Kainos Community, is a 501(c)3 Religious Organization providing a place for congregants and anyone from the general public to participate in worship services as well as Biblical Teaching. Kainos Community also coducts community outreach activities and aid to families and senior citizens. Kainos Community has more than ten different ministries in full operation which include: worship and arts, or its music ministry, an outreach ministry that focuses on members of the church going into the community and interacting with the neighborhood and surrounding areas, RHEMA, which provides training to those called to minister the Gospel, and a women and men's ministry among others. Kainos Community also participates in an outreach with

7

KRAUSE, a residential center for abused and neglected children. The church provides sheets, towels, clothes, and also Christian mentoring.  Kainos Community also conducts clothes drives for low income apartment complexes.  The church also provides backpacks and school supplies to local children. Kainos Community has a mandate to spread the Gospel and supports ministries worldwide.

**The Building History**

Kainos has occupied the building located at 19946 Saums Rd., Katy, Texas 77449, for eleven years.  Kainos purchased the property from a church that previously occupied the building in October 2002. In 2007, Kainos remodeled their worship center, re-carpeted, painted and enlarged the stage area as well as renovated other areas of the building.

## B.      Management and Insiders of the Debtor

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Joe and Yalonde Palmore, Katharyn Gray, and Veronica Eaves.  Both Ms. Gray and Ms. Eaves resigned from the Board of Directors in early 2011.

The Managers of the Debtor during the Debtor's chapter 11 case are Joe and Yalonde Palmore. As of May 2013, Fred Ponder is now a member of the Board of Directors.  Kainos Community is in the process of appointing additional board members, from active members of the church.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be the same as the managers during the pendency of the chapter 11 case. The responsibilities and compensation of these Post Confirmation Managers are described in section V.C.2 of this Disclosure Statement.

## C.      Events Leading to Bankruptcy In 2012

Kainos Community purchased the building located at 19946 Saums Rd., Katy, Texas 77449 from The Christian Church Extension Foundation, a Colorado nonprofit corporation, on October 17, 2002 for the amount of $750,000.00 dollars. From the start Kainos Community thrived with 500 plus members within their congregation, contributions approximating $8,000.00 dollars a week. Kainos also leased space to 3 separate churches, a school and a youth basketball team.  These endeavors earned Kainos Community an extra $3,200.00 dollars a month.

In 2009, Dr. Joe Palmore, senior pastor of Kainos Community, became ill and required brain surgery. The expected recovery time for the surgery was about 2 ½ years. It was then that Drs Joe and Yolonde Palmore appointed their youth minister, of four years, to preach and minister to the congregation during Pastor Palmore's recovery. The youth minister and members of the

church were uncertain of the outcome with their senior pastor's health and of Kainos Community. Therefore, the youth minister, with blessings from the Palmore's, started his own church within a few miles of Kainos Community. Approximately 50% percent of the members of the church left Kainos Community to join the youth minister or find another place of worship. Kainos Community's contributions from their members dropped drastically in light of the departure of more than half of the congregation.

In addition to the exodus of members, the 3 other churches and the school that were leasing space within the building no longer required the spaces. The youth basketball team also has limited their use of the gym. Moreover, the struggling national economy negatively impacted Kainos Community. Several members of the congregation became unemployed and were not able to contribute as before.

With limited income and a declining congregation, Kainos Community was unable to meet its financial obligations. The initial agreement for the purchase of the building from The Christian Church Extension Foundation was assigned to Foundation Capital Resources, Inc. (herein after "Foundation Capital"). In a letter dated October 16, 2012, Foundation Capital informed Kainos Community that a public sale of the property would take place on Tuesday, November 6, 2012.

The confluence of unfortunate circumstances noted above rendered the Debtor unable to prevent foreclosure.   In November of 2012, Kainos Community was forced to obtain counsel and seek bankruptcy protection.

## D.    Debtor's Financial Information

Since the filing of this case, the most significant events affecting the Debtor have been the global economic recovery and a rise in numbers of the congregation. The Debtor has generated income and paid post-petition expenses in the regular course of business. The Debtor's source of income continues to be the gifts and contributions from parishioners as well as income from leasing the building for practice to youth basketball teams and for service to another growing church.

The Debtor uses the cash method of accounting. The Debtor has filed operating reports in this case that reflect its current financial condition. A summary of the six most recent operating reports reveal the following:

-    Average monthly gross revenue  - $18,647.63

The operating reports indicate that the Debtor will have sufficient cash flow to fund the plan of reorganization.

### 1.    Debtor's Assets

The Debtor filed with the Bankruptcy Court its Schedules of Assets and Liabilities and Statement of Financial Affairs (collectively, the "Schedules"). The Schedules contain a listing of the

9

Debtor's assets and liabilities, together with the estimated fair market value of the Debtor's assets and the amounts owed to its Creditors. In connection with this Disclosure Statement, Creditors are referred to the Debtor's Schedules. The information contained in the Schedules was compiled by the Debtor to the best of its ability. These assets remain basically the same as on the date of filing and summarized below:

> Real Estate valued at $750,000.00
> Equipment and personal property valued at $7,511.00

### 2.      Executory Contracts and Unexpired Leases

The Debtor has no executory contracts or unexpired leases.

### E.      Significant Events during the Chapter 11 Case.

The Court signed an order approving the employment of counsel on November 30, 2012 and the Debtor concluded its Meeting of Creditors on February 01, 2013.

Since the filing of this case, the Debtor has improved its financial condition. The Debtor has solicited additional funds from its parishioners through tithes and offerings, income from youth basketball teams for utilizing the building for practice and income from a growing church to use the building for worship service. Debtor is also implementing a quarterly women's and men's conference, as well as ministry training, and marriage workshops to generate additional income.

### F.      Post-Petition Legal Proceedings

The Debtor has neither commenced nor been involved in any post-petition lawsuits.

### G.      Pre-Petition Legal Proceedings

Prior to filing, the Debtor was not involved in any lawsuits.

## V.      SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.      A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. Classes of Claims

#### 1. Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a) (2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

**Class 1 Allowed Administrative Claim**

These claims shall be paid in cash and in full on the Effective Date, the date on which such claim becomes an Allowed Claim or on such later date as the Debtor and the Holder of any Class 1 Administrative Claims shall agree. The U.S. Trustee fees will be paid as a Class 1 claimant if any are owed on the Effective Date. The Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6). Any fees due as of the date of confirmation of the plan will be paid in full on the effective date of the plan. After confirmation, the Debtor shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court. The Debtor shall file with the Court and serve on the United States Trustee a quarterly report for each quarter that the case remains open.

Additionally, the Debtor's attorney's fees will be paid in Class 1 after approval of the Court. It is estimated that the Debtor's attorney's fees will be less than $10,000.00.

#### 2. Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

**Class 2 – Secured Claim of Foundation Capital - Impaired**

Class 2 consists of the allowed secured claim of Foundation Capital for $648,036.16. This Claim shall be paid in full over thirty-six (36) months or three (3) years at 8.5% interest beginning 30 days after the Effective Date. The payment shall be in equal monthly installments of $5,400.00 per month for months 1 -35. The final payment of $614,964.07 will be paid in the 36th month. See attached amortization schedule Exhibit *B*.

### 3.    Classes of Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  The Debtor proposes to pay Class 4 claimants one hundred percent (100%) of each allowed claim.

**Class 3 –Unsecured Claims- Impaired**
**(Claims less than $1,000.00)**

Class 3 consists of general unsecured claims less than one thousand ($1,000.00) dollars, or any other general unsecured creditor that chooses reduction of its claim to less than $1,000.00. Pursuant to §1122(b) of the Code, Class 3 is an administrative convenience class that avoids exceptionally small payments throughout the entire length of the plan.

Class 3 claims shall be paid in equal monthly installments over an eight (8) month period beginning 30 days after the Effective Date until paid in full. The following chart lists the Debtor's Class 3 unsecured claims which are less than $1,000.00 and their proposed treatment under the Plan:

| Creditor | Claim | Amount Paid at 8 Equal Monthly Payments |
|---|---|---|
| ACS Technologies | $582.75 | $72.84 |
| Addicks Fire & Safety | $335.25 | $41.91 |
| AT&T | $882.40 | $110.30 |
| Lifeway Christian Resources | $150.71 | $18.84 |
| Met Printing | $174.00 | $21.75 |
| **Total** | **$2,125.11** | **$265.64** |

**Class 4 –General Unsecured Large Claims. – Impaired**
**(Claims Greater than $1,000.00)**

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The Debtor proposes to pay Class 4 claimants one hundred percent (100%) of each allowed claim.

Class 4 consists of general unsecured claims greater than one thousand ($1,000.00) dollars. Claims shall be paid in equal monthly installments over a twenty-four (24) month period

beginning 30 days after the Effective Date until paid in full. The following chart lists the Debtor's Class 4 unsecured claims which are greater than $1,000.00 and their proposed treatment under the Plan:

| Creditor | Claim | Monthly Payment Mo. 1-24 |
|---|---|---|
| Concorde Air Systems | $4,225.00 | $176.04 |
| First Nonprofit Insurance Agency | $2,270.00 | $94.58 |
| IRS | $1,700.00 | $70.83 |
| **Total** | **$8,195.00** | **$341.45** |

## C.   Means of Implementing the Plan

### 1.   Source of Payments

Payments and distributions under the Plan will be funded from its parishioners' tithes, offerings, pledges, income from leasing the building and from the Debtors other ongoing religious activities such as workshop, conferences, and training institutes.

### 2.   Post-confirmation Management

The Post-Confirmation Managers of the Debtor, and their monthly compensation, shall be as follows:

| Name | Insider (yes or no)? | Position | Compensation |
|---|---|---|---|
| Joe Palmore | Yes | President/ Director | $1,500.00 |
| Yolande Palmore | Yes | Vice-President/ Director | $1,500.00 |

## D.   Risk Factors

Confirmation of the Plan and successful completion of the Plan depends on a number of factors. Set forth below are risks that are material to Debtor's business operations.

The major risk facing the Debtor's reorganization is the overall economy. The Debtor relies heavily on gifts from its parishioners. When the economy worsens, parishioners usually reduce these gifts first. Therefore, the sensitivity to economic fluctuations is large. However, most signs point to an overall economic recovery.

Moreover, the Debtor's plan includes paying a large balloon payment to Foundation Capital in the thirty-six (36th) month of its plan. The Debtor plans to make the final payment by refinancing its real property. Again, the overall health of the national economy will be a large factor in the success of the Debtor's plan. Nevertheless, recent inquiries by the Debtor indicate that such refinancing is not only possible but indeed probable.

In addition, there are certain risks inherent in the reorganization process under the Bankruptcy Code. If certain standards set forth in the Bankruptcy Code are not met, the Bankruptcy Court will not confirm the Plan even if Creditors accept the Plan. Although the Debtor believes that the Plan meets such standards, there can be no assurance that the Bankruptcy Court will reach the same conclusion. If the Bankruptcy Court were to determine that such requirements were not met, it could require the Debtor to re-solicit acceptances, which could delay and/or jeopardize confirmation of the Plan. In this case, the same is true if the Bankruptcy Court determines that the contents of this Disclosure Statement are not sufficient or do not meet the standards of 11 U.S.C. § 1125.

As to the consummation of the Plan, if this Plan is confirmed then the Debtor believes it can perform as set forth in the proposed Plan.

## E.       Executory Contracts and Unexpired Leases

The Debtor has no executory contracts or unexpired leases.

## F.       Tax Consequences of Plan

### 1.       Introduction

The following discussion summarizes certain of the important federal income tax consequences of the transactions described herein and in the Plan. This discussion is for informational purposes only and does not constitute tax advice. This summary is based upon the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including judicial authority and current administrative rulings and practice. Neither the impact on foreign holders of claims and equity interests nor the tax consequences of these transactions under state and local law is discussed. Also, special tax considerations not discussed herein may be applicable to certain classes of taxpayers, such as financial institutions, broker-dealers, life insurance companies and tax-exempt organizations. Furthermore, due to the complexity of the transactions contemplated in the Plan,

14

and the unsettled status of many of the tax issues involved, the tax consequences described below are subject to significant uncertainties. No opinion of counsel has been obtained and no ruling has been requested from the Internal Revenue Service ("IRS") on these or any other tax issues. There can be no assurance that the IRS will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

**HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE THEREFORE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

### 2.      Tax Consequences to the Debtor

Generally, under the terms of the Plan, Creditors' claims are to be discharged. Any income corresponding to the satisfaction of claims at a discount should not constitute taxable income to the Debtor since the debt forgiveness arises in connection with a case under Title 11of the United States Code. The Debtor may be required to reduce certain tax attributes, such as net operating loss ("NOL") carryovers. Any NOLs remaining may be subject to utilization limitations imposed by Section 382 of the Internal Revenue Code of 1986, as amended.

### 3.      Tax Consequences to Creditors

In General. The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, on: (a) whether its Claim constitutes a debt or security for federal income tax purposes, (b) whether the Claimant receives consideration in more than one tax year, (c) whether the Claimant is a resident of the United States, (d) whether all the consideration by the Claimant is deemed to be received by that Claimant as part of an integrated transaction, (e) whether the Claimant reports income using the accrual or cash method of accounting, and (f) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim. Gain or Loss on Exchange. Generally, a holder of an Allowed Claim will realize a gain or loss on the exchange under the Plan of his Allowed Claim for cash and other property in an amount equal to the difference between (i) the sum of the amount of any cash and the fair market value on the date of the exchange of any other property received by the holder (other than any consideration attributable to accrued but unpaid interest on the Allowed Claim), and (ii) the adjusted basis of the Allowed Claim exchanged therefore (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). Any gain recognized generally will be a capital gain (except to the extent the gain is attributable to accrued but unpaid interest or accrued market discount, as described below) if the Claim was a capital asset in the hand of an exchanging holder, and such gain would be a long-term capital gain if the holder's holding period for the Claim surrendered exceeded one (1) year at the time of the exchange. Any loss recognized by a holder of an Allowed Claim will be a capital loss if the claim constitutes a "security" for federal income tax purposes or is otherwise held as a capital asset. For this purpose, a "security" is a debt instrument with interest coupons or in registered form.

### 4.     Preservation of Net Operating Loss and Tax Attributes

Section 382 of the Internal Revenue Code could substantially limit, or deny in full, the availability of the Debtor's net operating loss and tax credit carry forwards as a result of the transactions contemplated under the Plan. Moreover, Section 108 of the Internal Revenue Code could result in the reduction of the loss and credit carry forwards based on the amount of debt discharged or converted to equity in the Reorganized Debtor as provided by the Plan.

### 5.     Information Reporting and Backup Withholding

Under the backup withholding rules of the Internal Revenue Code, holders of Claims may be subject to backup withholding at the rate of 31 percent with respect to payments made pursuant to the Plan unless such holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income. Any amount withheld under these rules will be credited against the holder's federal income tax liability. Holders of Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/or Advisors.*

The following are the anticipated tax consequences of the Plan: List the following general consequences as a minimum: (1) Tax consequences to the Debtor of the Plan; (2) General tax consequences on creditors of any discharge, and the general tax consequences of receipt of plan consideration after confirmation.

## VI.     CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.     Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

16

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 2, 3, and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### 1.   What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case was March 4, 2013.*

### 2.   What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.   Who is not Entitled to Vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

• holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

• holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

• administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

### 4.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by A cram down on non-accepting classes, as discussed later in Section B.2.

### 1.    Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2.    Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a cram down plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not

"discriminate unfairly", and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

## C.    Liquidation Analysis

The Debtor, a non-profit, does not believe that the case can be converted to Chapter 7. However, comparison to a Chapter 7 liquidation suffices to illustrate the point in this case.  If a conversion of the case were to occur, then a trustee would be elected or appointed to liquidate the Debtor's assets. The proceeds of the liquidation would be distributed to the respective holders of Claims against and Equity Interests in the Debtor according to the priorities established by the Bankruptcy Code. Under Chapter 7, a secured creditor whose claim is fully secured would be entitled to full payment, including interest, from the proceeds of the sale of its collateral. Unless its claim is nonrecourse, a secured creditor whose collateral is insufficient to pay its claim in full would be entitled to assert an unsecured claim for its deficiency. Claims entitled to priority under the Bankruptcy Code would be paid in full before any distribution to general unsecured creditors. Funds, if any, remaining after payment of secured claims and priority claims would be distributed pro rata to general unsecured creditors. Debtor believes that liquidation under Chapter 7 will not result in recovery of as much as it can realize in the continued operation of its business by the Debtor. Historically when Trustee's sell property it is at a reduced value and the Trustee is allowed to be paid a percentage of the recovery and also to pay his professionals that are retained. Therefore, the Debtor believes that the most equity can be realized from the continued operation of its business. In the instant case, all of the Debtor's real property, equipment, and inventory represent collateral for the secured creditors.  Conversion to Chapter 7 would therefore, provide no recovery for the unsecured class of creditors.

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit C.

## D.    Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1.    Ability to Initially Fund Plan

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

**2.**     **Ability to Make Future Plan Payments And Operate Without Further Reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit D.

The Plan Proponent's financial projections show that the Debtor will have an aggregate positive cash flow for the next twelve months after paying plan payments, operating expenses, and post-confirmation taxes.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

## VII.   EFFECT OF CONFIRMATION OF PLAN

### A.     Discharge

<u>Discharge.</u> On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan to the extent permitted by the Bankruptcy Code and except as expressly provided in this Plan.

### B.     Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C.     Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

**THE DEBTOR STRONGLY URGES ALL IMPAIRED CREDITORS TO VOTE TO ACCEPT THE PLAN.**

May 23, 2013

Respectfully submitted,

GARNER SCOTT & JONES, PLLC

/s/ Nelson M. Jones III
Nelson M. Jones III
SBN 10973400
Famose T. Garner
SBN 24074252
Brendetta A. Scott
SBN 24012219
440 Louisiana, Suite 1575
Houston, Texas 77002
(713) 236-8736
(713) 236-8990 (fax)
Njoneslawfirm@aol.com


*/s/ Joe Palmore*
Joe Palmore, PRESIDENT

*/s/ Yolande Palmore*
Yolande Palmore, Vice-President